NO. 12-00-00183-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




AMERICAN FRACMASTER, LTD.,
§
 APPEAL FROM THE 124TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


LARRY RICHARDSON,

APPELLEE
§
 GREGG COUNTY, TEXAS






 

 A declaratory judgment action was brought by Larry H. Richardson ("Richardson") against
American Fracmaster, Ltd. ("AFL") to declare a non-competition agreement unenforceable. After
a summary judgment hearing, the trial court found the agreement unenforceable, and AFL appealed. 
We reverse the declaratory judgment in favor of Richardson, render judgment for AFL that
Richardson waived his right to contest the enforceability of the non-competition agreement, and
reverse and remand AFL's counterclaims for further proceedings on the merits. 


Background Richardson went to work for AFL in 1996. He left for approximately three months (because
of another disputed non-competition agreement), then continued working for AFL until the summer
of 1999. In December of 1997, Richardson entered into an Employment Agreement with AFL. Also
in December of 1997, the company issued a Severance Policy. In June of 1999, BJ Services Co.
acquired all of the stock of AFL's general and limited partners and assumed control of AFL. This
triggered the application of AFL's Severance Policy. BJ Services offered Richardson a position with
the new company, which Richardson declined. According to summary judgment evidence,
Richardson told the President of BJ Services on several occasions that he did not need to work, and
that he intended to comply with his non-competition agreement. 

 After his last day of employment, Richardson signed a Release Agreement and was paid
approximately $180,000.00 by AFL/BJ Services. Richardson was given forty-five days to think
about it before he signed the Release. He was also given seven days to revoke it after signing it. 
Richardson admitted that he had an attorney review the Release before he executed it. 
Approximately two months after he was paid pursuant to the Release, Richardson filed a declaratory
judgment action to determine the validity of the non-competition provisions because he wished to
return to work. 


The Documents 

 In the Employment Agreement, AFL promised Richardson, as its President, employment
until retirement, a $100,000.00 annual salary, and twelve months of severance pay and benefits upon
separation. However, the Employment Agreement also provided for termination of Richardson in
the event of disability, for cause, or without cause with twelve months prior written notice. The
Employment Agreement also included a non-competition agreement, wherein Richardson promised
not to compete for twelve months after separation of employment, and not to solicit AFL employees
to enter into employment with any company in competition with AFL.

 Pursuant to the Severance Policy, upon a change in the ownership of the company, severance
pay would be paid based on continuous employment with AFL. But if the employee had a better
severance package in his employment agreement, he could choose the agreement more beneficial to
him. The employee would be bound by any and all confidentiality, invention, and non-competition
covenants or obligations that were in place at the time of the change of ownership.

 In the Release Agreement, Richardson accepted an additional seven months of no
competition in return for an additional seven months of severance pay. Paragraph 8 of the Release
states the following:


 Further, Employee agrees to and accepts that the time period applicable to the non-competition
provision has been extended from 12 months as originally provided in his Employment Agreement to
19 months, commencing from the effective date of Employee's termination of employment, in return
for Employee receiving 7 months additional severance pay for his years of service at Acid
Engineering, (1) with said additional severance pay already calculated into and showing in the lump sum
amount specified in Paragraph 3 of this Agreement.


 Even though Richardson did not plead ambiguity, the trial court allowed parol evidence to
help interpret the various agreements, which were somewhat ambiguous. One such ambiguity was
present in the Release Agreement, which stated that Richardson was paid pursuant to the Severance
Policy. However, according to the Severance Policy, he would have been paid considerably less than
the $180,000.00.


Summary Judgment Standard of Review

 By way of six issues, AFL complains that the trial court erred when it granted Richardson's
Motion for Summary Judgment. In reviewing a 166a(c) summary judgment, this Court must apply
the standards established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546 (Tex. 1985),
which are:


 1. The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law.


 2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.


 3. Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.


Id. at 548-49. For a party to prevail on a motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c). Since the burden of proof is on the movant, and all doubts
about the existence of a genuine issue of a material fact are resolved against the movant, we must
view the evidence and its reasonable inferences in the light most favorable to the nonmovant. Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). 

 Once the movant has established a right to summary judgment, the non-movant has the
burden to respond to the motion for summary judgment and present to the trial court any issues that
would preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d
671, 678 (Tex. 1979). A summary judgment is improperly granted if the non-movant brings forth
more than a scintilla of probative evidence to raise a genuine issue of material fact. Moore v. K Mart
Corp., 981 S.W.2d 266, 269 (Tex. App.- San Antonio 1998, pet. denied). More than a scintilla of
evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions." Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to
do no more than create a mere surmise or suspicion" of a fact. Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). We are not required to ascertain the credibility of affiants or to
determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment
proof. The only question is whether or not an issue of material fact is presented. Gulbenkian v.
Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). 

 In granting a summary judgment, the trial court is confined to the specific grounds set forth
in the motion. See Clear Creek Basin Auth., 589 S.W.2d at 677. If the trial court's judgment does
not specify the ground relied upon for its ruling, the summary judgment must be affirmed if any of
the theories advanced are meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380
(Tex. 1993). Stated another way, so long as one of the summary judgment grounds in the motion
is upheld on appeal, the trial court's judgment must be affirmed. See Tenneco, Inc. v. Enterprise
Prods. Co., 925 S.W.2d 640 (Tex. 1996).

 When both sides move for summary judgment, and the trial court grants one motion and
denies the other, as in the instant case, the reviewing court should review the summary judgment
evidence presented by both sides and determine all questions presented. The Commissioners Court
of Titus County, et al. v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). The appellate court may reverse
the trial court judgment and render such judgment as the trial court should have rendered, including
rendering judgment for the other movant. Id.; Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988).



Richardson's Grounds for Summary Judgment


 The non-competition agreement in the Release and the Employment Agreement are unenforceable because neither was "ancillary to an otherwise enforceable agreement" at the
time it was made.
 The non-competition agreement is unenforceable because its scope is unreasonable.
 Non-compete unenforceable because AFL is out of business, and therefore does not have "an
interest worthy of protection."
 The non-competition agreement is unenforceable because AFL failed to make any promise
to Richardson that would give rise to any legal interest in restraining Richardson from
competing (in other words, no valid consideration).
 The non-competition agreement is unenforceable because the payment of monies cannot
form the valid basis of a non-competition provision for a post-employment restrictive
covenant.
 AFL's counterclaims are without merit because the money paid to Richardson was made to
him pursuant to the "Change of Control Employee Severance Policy," not pursuant to the
Release.
 Reformation is appropriate, if the non-compete is found to be valid.



Issues on Appeal

 AFL contends on appeal that (1) the trial court improperly declared the non-compete
provisions unenforceable as a matter of law, are supported by ample consideration, contain reciprocal
promises, are necessary to protect AFL's interests, and are reasonable in scope; (2) the trial court
erred in declaring the non-compete provisions unenforceable because Richardson waived or released
or is estopped from bringing this claim; (3) the trial court's dismissal of AFL's counterclaims was
improper because Richardson was paid pursuant to the Release Agreement and because genuine
issues of material fact exist; (4) the trial court erred in denying AFL's Motion for Continuance
because AFL was not allowed adequate time to conduct discovery and respond to Richardson's
Motion for Partial Summary Judgment; (5) the trial court erred in denying AFL's Motion to Strike
Richard's Summary Judgment evidence because the affidavits contain conclusory statements by
witnesses who were without personal knowledge of the facts; and (6) the trial court's award of
Richardson's attorney's fees and costs was improper and not supported by equity. 


Non-Competition Agreements

 The legislature enacted the Covenants Not to Compete Act in 1989, which largely supplanted
the common-law development of this area of law up to that time. Tex. Bus. & Comm. Code. Ann.
§ 15.50, et seq. (Vernon Supp. 1996). A covenant not to compete is a restraint of trade and will not
be enforced unless it is reasonable. Travel Masters, Inc. v. Star Tours, Inc., 827 S.W.2d 830, 832
(Tex. 1991). A covenant not to compete is enforceable if (1) it is ancillary to or part of an otherwise
enforceable agreement at the time the agreement is made, and (2) it contains limitations as to time,
geographical area, and scope of activity to be restrained that are reasonable and do not impose a
greater restraint than is necessary to protect the good will or other business interest of the promisee. 
Tex. Bus. & Comm. Code. Ann. § 15.50 (Vernon Supp. 1996). In order to be ancillary to an
otherwise enforceable agreement,




 
 the consideration given by the employer in the otherwise enforceable agreement must give rise to the
employer's interest in restraining the employee from competing; and

 the covenant must be designed to enforce the employee's consideration or return promise in the
otherwise enforceable agreement.
 



Light v. Centel Cellular Co., 883 S.W.2d 642, 647 (Tex. 1994). (2) In the context of a non-competition agreement, an employer must make a non-illusory promise in return for which the
promise to not compete was made. A non-illusory promise is one which actually binds the employer. 
Id. at 644-45. The enforceability of a covenant not to compete is a question of law for the court. 
Id. at 644. 

 AFL argues that we should not apply Light's two-prong test in this case since Richardson
was not an at-will employee. We need not reach the question of Richardson's employment status,
however, because Light clearly applies to both at-will and term employment. (3) 


The Employment Agreement 

 In the Employment Agreement between Richardson and AFL, there are three promises that
are not illusory and thus capable of serving as consideration for an agreement. Those three promises
are: (1) AFL's promise to provide twelve (12) months prior written notice of termination if
Richardson is terminated without cause; (2) Richardson's promise to return to AFL, upon
termination of employment, any and all notes, records, documents, devices, data, drawings,
materials, equipment, reproductions, excerpts, or extracts, and all copies thereof, that pertain to the
confidential information or developments or to the business and operations of AFL generally; and
(3) Richardson's promise not to disclose or use any confidential information obtained from AFL for
anything but the benefit of AFL. Since these three promises are non-illusory, the Employment
Agreement is an otherwise enforceable agreement.

 The next question is whether the non-competition agreement is ancillary to this otherwise
enforceable agreement. We must apply Light's two-prong test to make this determination. The first
prong is whether the consideration given by the employer in the otherwise enforceable agreement
gives rise to the employer's interest in restraining the employee from competing. (4) We hold that in
this case, it does not. AFL's promise to give notice of termination does not give rise to AFL's
interest in restraining Richardson from competing. See Donahue v. Bowles, Troy, Donahue,
Johnson, Inc., 949 S.W.2d 746, 752 (Tex. App.- Dallas 1997, writ denied). The second prong, on
the other hand, is satisfied by one of Richardson's promises, but is not satisfied by the other. 

 The covenant not to compete is designed to enforce Richardson's promise not to disclose or
use AFL's confidential information. However, AFL did not agree to provide confidential
information in exchange for Richardson's promise not to disclose it. As discussed above, the
consideration provided by AFL, i.e., its promise to give notice of termination, does not give rise to
its interest in restraining Richardson from disclosing confidential information. Concerning
Richardson's agreement to return confidential information to AFL upon termination, we note that
a non-competition agreement is not designed to enforce such a promise. See Light, 883 S.W.2d at
648 n.15. Because both prongs of the two-prong test are not satisfied, the non-competition
agreement is not ancillary to the Employment Agreement, and is therefore a naked restraint on trade. 
Consequently, it is unenforceable.


The Waiver and General Release Agreement

 Richardson and AFL exchanged several promises in the Release Agreement which could
potentially serve as consideration for an agreement. Six of those promises are: (1) Richardson
releases and discharges any and all claims to entitlements, compensation or benefits under the
Employment Agreement; (2) AFL agrees to pay Richardson $182,083.00; (3) Richardson agrees not
to file a lawsuit to assert any claims against AFL; (4) Richardson agrees not to seek reinstatement
or future employment with AFL; (5) Richardson agrees to keep this release agreement confidential;
and (6) Richardson agrees not to disclose any confidential information obtained while employed by
AFL. These are all non-illusory promises and, therefore, the release constitutes an otherwise
enforceable agreement.

 We must next determine if the non-competition agreement is ancillary to this otherwise
enforceable agreement. For the non-competition agreement to be ancillary to the Release
Agreement, the following must be true: (1) the consideration given by AFL (the $182,083.00) in the
release agreement (exchange of currency for promise not to disclose) must give rise to AFL's interest
in restraining Richardson from competing (AFL has interest in restraining Richardson with
knowledge of AFL's confidential information from competing), and (2) the covenant must be
designed to enforce Richardson's consideration or return promise (the promise not to disclose
confidential information) in the otherwise enforceable agreement (the Release Agreement). Because
the $182,083.00 given by AFL does not give rise to AFL's interest in restraining Richardson from
competing, we hold that the covenant not to compete is not ancillary to the Release Agreement. The

non-competition agreement is therefore unenforceable as a naked restraint on trade. (5) 


Employee Severance Policy

 In the Severance Policy agreed to by Richardson and AFL, there are two promises which
could potentially serve as consideration for an enforceable agreement. Those two promises are: (1)
AFL agrees to pay severance benefits to Richardson in the event a "change of control" of the
company occurs; and (2) Richardson agrees "to be bound by any and all confidentiality, invention,
and non-competition covenants or obligations that are in place at the time of the Change of Control." 
Since AFL and Richardson both make non-illusory promises, the Severance Policy is an otherwise
enforceable agreement. 

 However, in applying Light's two-prong test, it is clear that AFL's agreement to pay
Richardson severance pay does not give rise to AFL's interest in restraining Richardson from
competing. Also, the covenant not to compete is not designed to enforce Richardson's return
promise to be bound by any and all confidentiality, invention, and non-competition covenants or
obligations that are in place at the time of the Change of Control. In other words, the promise to be
bound by a non-competition agreement cannot serve as consideration for the non-competition
agreement itself. Thus, the non-competition agreement in the Severance Policy fails for lack of
consideration. We overrule AFL's first issue. 


Waiver, Release or Estoppel

 In its second issue, AFL contends that the trial court erred in declaring the non-compete
provisions unenforceable because Richardson waived or released or is estopped from bringing this
claim. Waiver is an intentional relinquishment of a known right either made expressly, indicated
by conduct that is inconsistent with an intent to claim the right, or shown by the circumstances
surrounding the making of the contract. United States Fidelity & G. Co. v. Bimco Iron & M. Corp.,
464 S.W.2d 353, 357 (Tex. 1971). In regards to waiver, the Release Agreement states the following: 


. . .

 In consideration for this lump sum payment [$182,083.00]. . . Employee voluntarily and knowingly
waives, releases and discharges American Fracmaster, Ltd., BJ Services Company and their parents,
successors, subsidiaries, affiliates, employees, officers, directors, owners, partners, shareholders,
agents and assigns from all claims, liabilities, demands and causes of action, known or unknown, fixed
or contingent, which Employee may have or claim to have against any of them as a result of his
employment and/or termination from employment. Employee agrees not to file a lawsuit to assert any
such claims. This waiver, release and discharge includes, but is not limited to: (1) claims arising under
federal, state or local laws prohibiting employment discrimination such as, without limitation, Title
VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (for claims arising
through the date of Employee's signature on this Agreement), the Americans with Disabilities Act,
Section 451 of the Texas Labor Code, and the Texas Commission on Human Rights Act, (2) claims
for breach of contract including, without limitation, claims arising under the Employment Agreement,
the Separation Policy, and/or any other agreements or contracts which Employee may have with any
of the entities or persons listed in this Paragraph, except for any claim for breach of this Agreement,
(3) claims for personal injury, harm or other damages (whether intentional or unintentional), (4) claims
growing out of any legal restrictions on right of American Fracmaster Ltd. or BJ Services Company
to terminate employees, (5) claims for wages or any other compensation, or (6) claims for benefits or
entitlements including, without limitation, those arising under the Employee Retirement Income
Security Act.


. . .


 As we stated earlier, the Release Agreement is an enforceable contract. Among other things,
Richardson specifically agreed not to bring suit against AFL for any reason, other than for the breach
of the Release Agreement itself. There is no exception for the filing of a Declaratory Judgment
action to declare the non-competition agreements to be unenforceable. Furthermore, elsewhere in
the Release Agreement, Richardson agreed that the covenant not to compete was reasonable and
valid and that he irrevocably waived all defenses to the strict enforcement of that covenant. We
hold, therefore, that Richardson knowingly and voluntarily waived his right to bring this action and
to challenge the validity of the non-competition agreement. (6) Thus, we sustain issue two. 


AFL's Counterclaims

 In its third issue, AFL contends that the trial court erroneously granted summary judgment 

for Richardson on all of AFL's counterclaims. In its original answer, AFL asserted counterclaims
for fraud, negligent misrepresentation, promissory estoppel, anticipatory repudiation, rescission,
restitution and unjust enrichment to obtain damages for Richardson's alleged fraudulent behavior
in inducing the Release Agreement, to enforce the Release Agreement, or in the alternative, to
recover the $182,083.00 AFL paid to Richardson under the Release Agreement. 

 In its Order Granting Partial Summary Judgment, the trial court stated the following:


 IT IS FURTHER ORDERED that summary judgment is granted for Plaintiff regarding all of
Defendant's counterclaims and that the lump sum severance payment made to Plaintiff was made
pursuant to the Change of Control Employee Severance Policy in force at the time of payment and
therefore Plaintiff is granted summary judgment as to all of Defendant's counterclaims.


According to the above order, the trial court dismissed AFL's counterclaims on the basis of its
conclusion that Richardson was paid the $182,083.00 under the Severance Agreement. However,
in calculating the amount of severance pay due Richardson under the Severance Agreement,
Richardson was only entitled to five to seven months severance pay (depending upon his age), a
substantial amount less than the $182,083.00 which he was actually paid. This raises a fact issue as
to whether or not Richardson was paid under the Severance Agreement, or whether he was paid
pursuant to the Release Agreement.

 Further, AFL raised fact issues as to all of its counterclaims. Attached to its Response to
Richardson's Motion for Summary Judgment, is an affidavit signed by Kenneth A. Williams. In his
affidavit, Williams states that he is the President of Fracmaster U.S.A. and Vice President of BJ
Services Co. After BJ Services bought AFL, Williams spent many hours with Richardson in order
to become acquainted with all aspects of AFL. During this time, Richardson told Williams on
several occasions that he was financially secure, that he did not need to work, that he intended to
retire from the oilfield business and that he did not intend to compete with AFL or BJ Services. 

 Also attached to AFL's Response is an affidavit by Stephen Wright, who is currently the
Director of Human Resources for BJ Services. He testifies that AFL and BJ Services would not have
paid the full $182,083.00 to Richardson if he had not signed the Release Agreement, which included
an eighteen month non-competition covenant. Wright also states that the payment of additional
monies above and beyond the original severance payment was a settlement of a disputed claim.

 Additionally, in support of its contention that Richardson fraudulently induced AFL to enter
into the Release Agreement, AFL attached a letter from Richardson to Williams wherein Richardson
writes, "There seems to be some concern on behalf of BJ about the non-competition provision in my
contract. I assure you I am aware of this provision and intend to strictly comply with my contract
. . . ." 

 The Release Agreement reflects that Richardson signed the document on 8/4/99. On 9/28/99,
Richardson wrote to BJ Services stating that he had a job offer from a major service company, which
he was seriously considering accepting. He admitted that this company was a competitor of BJ
Services, and that he wondered what BJ Services' response would be if he took the job. 

 We hold that the above-recited evidence is sufficient to raise fact issues as to whether or not
Richardson knew the non-competition agreements were unenforceable, whether he ever intended to
comply with the non-competes, and whether he knowingly or negligently made misrepresentations
to induce AFL to pay him more in severance pay that he was actually entitled to, when he knew he
was not going to abide by the Release Agreement. We hold, therefore, that AFL brought forth more
than a scintilla of probative evidence to raise genuine issues of material fact as to its counterclaims
for fraud, negligent misrepresentation, promissory estoppel, anticipatory repudiation, rescission,
restitution and unjust enrichment. Accordingly, we sustain issue three.


Attorney's Fees

 The trial court's award of attorney's fees and costs to Richardson under the Declaratory
Judgment Act is based upon that court's declaration that the non-competition agreements are
unenforceable. However, because we have held that Richardson waived his right to bring the
Declaratory Judgment action, the award of attorney's fees and costs to Richardson is improper. 
Consequently, we sustain issue six. 


Conclusion

 Because we have sustained issues two, three and six, it is unnecessary for us to address the
additional issues raised by AFL. Accordingly, we reverse the declaratory judgment in favor of
Richardson and for attorney's fees and costs because, as a matter of law, he waived his right to
challenge the validity of the non-competition agreement. Furthermore, we render judgment for AFL






based upon the affirmative defense of waiver, and reverse and remand AFL's counterclaims for
further proceedings on the merits.


 LEONARD DAVIS 

 Chief Justice



Opinion delivered October 24, 2001. 

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.









PUBLISH
1. Richardson, along with several other employees, went to work for AFL after many years of service with
Acid Engineering. There was discussion at a board meeting that to expand the severance package to include an
employee's time with Acid Engineering would be a real selling point for the Severance Policy. At the summary
judgment hearing, Richardson contended that the Severance Policy was always intended to reflect an AFL's
employee's years of service with Acid Engineering; but AFL asserted that it only agreed to pay Richardson for his
time with Acid Engineering as a settlement of a disputed claim, and to extend the non-competition agreement. 
2. To the extent that this opinion is inconsistent with the opinion of this Court in Stone, et al. v. Griffin
Communications and Security Systems, No. 12-01-00010-CV, 2001 Tex. App. LEXIS 5032, at *13 n.5 (Tex. App.
- Tyler July 25, 2001, no writ), we hereby overrule Stone.
3. See Light, 883 S.W.2d 642, 646 n.10.
4. AFL cites DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 681 n.6 (Tex. 1990), for the proposition that
consideration for a non-compete provision can take many forms. However, this common law approach has been
superseded by statute. See Light, 883 S.W.2d at 643-44.
5. We note that even if AFL had stated in the Release Agreement that it had provided Richardson with
confidential information, this would not have been adequate consideration for the non-competition agreement, since
past consideration will not support a subsequent promise not to disclose. See CRC-Evans Pipeline Int'l, Inc. v.
Myers, 927 S.W.2d 259, 265 (Tex. App.- Houston [1st Dist.] 1996, no writ).
6. We note that Richardson was given forty-five days to discuss the Release Agreement with an attorney, and
was also given seven days after he signed it to revoke it.