624 S.W.2d 222 (1981)
SUMMIT INSURANCE COMPANY OF NEW YORK, Appellant,
v.
CENTRAL NATIONAL BANK OF HOUSTON, Appellee.
No. 17950.
Court of Civil Appeals of Texas, Houston (1st Dist.).
July 23, 1981.
Rehearing Denied September 3, 1981.
*223 Fulbright & Jaworski, Owen W. Cecil and Regan W. Simpson, Houston, for appellant.
Bracewell & Patterson, Robert L. Rouner, James P. Keenan, Houston, for appellee.
Before COLEMAN, C. J., and PEDEN and SMITH, JJ.
COLEMAN, Chief Justice.
This is an appeal from a summary judgment granted in a suit involving an interpretation of a letter of credit issued by Central National Bank of Houston (CNB) addressed to Summit Insurance Company of New York (Summit) on behalf of Shelter Insurance Corporation (Shelter).
In answer to a petition filed by CNB for a declaratory judgment interpreting the letter of credit, Thomas A. Harnett, Superintendent of Insurance of the State of New York, as liquidator of Summit Insurance Company of New York, filed an answer consisting of a general denial and a special answer asserting in general terms that CNB was guilty of fraud and estopped to deny the applicability of the letter of credit to sight drafts at issue because of CNB's knowledge of a general agency agreement between Summit and Shelter. Summit also filed a counterclaim seeking to recover from CNB the amount of certain drafts issued against the letter of credit.
Summit filed a response to a motion for summary judgment filed by CNB in which it asserted that issues of fact existed concerning the interpretation of the letter of credit and the entitlement of Summit to payment from CNB on two sight drafts. The response also asserted that issues were raised on fraud and estoppel. The response was supported by affidavits and copies of certain instruments. The summary judgment granted by the trial court determined that CNB had no liability to Summit under the terms of the letter of credit and ordered that Summit take nothing against CNB on its counterclaim.
By the terms of a general agency agreement Shelter agreed to act as Summit's general agent in writing bonds and certain lines of insurance in California. The agreement provided for a security fund in the amount of $500,000. At the request of Shelter, CNB issued a letter of credit to Summit in that amount which was accepted by Shelter as fulfilling the security fund requirement of the contract with Shelter. The agency agreement provided:

*224 The Security Fund is established for the protection of both Agent and Company in reducing the effect of adverse loss experience. The Agent agrees to provide to the Company deposit in the amount of $500,000 to be held by the Company. The deposit and the Security Fund shall be used as credit against any amount which Agent owes Company and has not been paid pursuant to the terms of the General Agency Agreement. In the event of termination of this Agreement and the expiration or termination of all policies and the settlement of all claims and Agents' accounts due the Company, any amount remaining in the Security Fund shall be promptly paid the Agent.
Attached to Summit's response to the motion for a summary judgment was a copy of the letter of credit issued by CNB reading:
At the request of and for the account of Saratoga Development Corporation and Shelter Insurance Corporation, ... we hereby open in your favor our irrevocable letter of credit No. 236960 for any sum or sums not exceeding in total U.S. $500,000.00 (U.S. Dollars) effective immediately and expiring at our close of business at our office in Houston, Texas, two years from the date of this letter of credit.
We understand that this letter of credit relates to a general agency agreement between Summit Insurance Company of New York and the Shelter Insurance Corporation and funds under this credit are available to you for application to a deficit balance existing at this time between Summit Insurance Company of New York and the Shelter Insurance Corporation pursuant to the terms of the aforesaid general agency agreement which is now in effect or to any loss which has accrued under any bond issued pursuant to that general agency agreement. Funds under this credit are available to you as aforesaid on or after the date hereof but not later than two years from the date of this letter unless renewed for an additional period up to two years, against your sight draft on us bearing the number of this letter of credit, and accompanied by a written statement signed by an authorized officer of the Summit Insurance Company of New York setting forth a description of the aforesaid general agency agreement, the amount of the deficit or loss against which funds under this credit are to be applied, and calculations of such deficit or loss.
This letter of credit shall remain irrevocable for a period of two years from the date hereof and shall automatically expire two years from the date of this letter unless we give you written notice at least thirty (30) days prior to termination of our intention to renew this letter of credit.
This letter of credit sets forth in full the terms of our undertaking.
Your sight draft so drawn on and accompanied by a proper claim or demand in accordance with the aforesaid general agency agreement and presented to our letter of credit department at 2100 Travis Street, Houston, Texas, prior to the expiration hereof, shall be honored by us within thirty days (30) days of receipt of same. Communications in respect to this letter of credit should be addressed to our letter of credit department and make specific reference to the number of this letter of credit.
Summit, within the time limits established, presented to CNB two drafts which it contends were accompanied by proper documentation. CNB refused to pay the drafts because the deficit balance to which the funds were to be applied was not in existence at the time of the issuance of the letter. It is undisputed that neither a deficit balance existed, nor had any loss accrued under the agency agreement prior to the execution date of the letter of credit. Summit contends that the court must look to the underlying transaction between Shelter and Summit in construing the letter of credit. Summit asserts that it is clear from the letter of credit that it was executed for the purpose of meeting the security fund requirement because of the references to the general agency agreement found in the letter of credit. Summit also points out *225 that the agency agreement under its terms could not become effective prior to the time the letter of credit was available, so that if the letter of credit is interpreted as contended by CNB it would be meaningless.
Certain principals governing transactions involving letters of credit are discussed in Pringle-Associated Mortgage Corp. v. Southern National Bank of Hattiesburg, Mississippi, 571 F.2d 871, 874 (5th Cir. 1978). The court stated:
The district court was in error in construing conditions to exist in the letter of credit on the basis of the underlying agreements between the beneficiary and the bank's customer. The essence of a letter of credit is the promise by a bank, or other issuer, to pay money. The key to the uniqueness of a letter of credit and to its commercial vitality is that the promise by the issuer is independent of any underlying contracts. (citations omitted).
As the Third Circuit has said, "[t]he beneficiary bases his claim on the letter of credit ... not on the agreement between the customer and the issuing bank, nor upon the underlying arrangement between customer and beneficiary." Chase Manhattan Bank v. Equibank, 550 F.2d 882, 886 (3rd Cir. 1977). Thus, a court should not resort to those underlying agreements in interpreting a letter of credit. See, Dulien Steel Products, Inc., of Washington v. Bankers Trust Co., 298 F.2d 836 (2nd Cir. 1962). The beneficiary's non-compliance with the underlying contract does not affect the issuer's liability unless a reference to the underlying contract explicitly creates a condition for honoring a draft. General references to underlying agreements are surplusage and should not be considered in deciding whether the beneficiary has complied with the terms of the credit. West Virginia Housing Development Fund v. Sroka, 415 F.Supp. 1107 (W.D.Pa.1976).
The Supreme Court of Texas in Republic National Bank of Dallas v. Northwest National Bank of Fort Worth, 578 S.W.2d 109, 116 (Tex.1978) cited with approval Pringle-Associated Mortgage Corp. v. Southern National Bank of Hattiesburg, Mississippi, supra at 874, in support of this statement:
[W]hile it is true that the instrument refers to the underlying transaction, it has been held that such general references may be disregarded as surplusage unless they impose some condition to the issuer's liability. (citations omitted). Nowhere does it appear that Northwest was required to go outside the presented draft and documents to determine its liability.
The letter of credit issued by CNB not only states that the letter of credit relates to a general agency agreement between Summit Insurance Company of New York and the Shelter Insurance Corporation, but also states that the sight draft on the fund must be accompanied by a proper claim or demand in accordance with the aforesaid general agency agreement. This provision requires CNB to go outside the presented draft to determine its liability. It imposes a condition to the issuer's liability.
In order to determine whether the two sight drafts drawn on the letter of credit were accompanied by "a proper claim or demand in accordance with the aforesaid general agency agreement" the bank necessarily must have been supplied with a copy of the general agency agreement. It is necessary, therefore, to determine whether or not the underlying agreement can be resorted to in interpreting this letter of credit.
The letter of credit states that it sets forth in full the terms of the undertaking. It provides that the funds under the credit are available for application to a deficit balance existing "at this time" or to any loss "which has accrued" under any bond issued pursuant to the general agency agreement. It then states that funds under this credit are available "as aforesaid" on or after the date of the letter. It requires a sight draft bearing the number of the letter of credit, accompanied by a written statement signed by an authorized officer of the insurance company describing the general agency agreement, the amount of the deficit or loss against which the funds are to be applied, and the calculation of the deficit or *226 loss. Finally, it requires that the sight draft "so drawn" and accompanied by a proper claim in accordance with the general agency agreement be presented prior to the expiration date of the letter. Thus it appears that there is no promise to pay any money under the letter of credit other than moneys due under the agency agreement at the time of the execution of the letter. It is undisputed that no such sums were or could have been due at that time under the terms of the general agency agreement. The letter of credit does not give Summit the protection which was contemplated in the agency agreement between Summit and Shelter and might have been rejected by Summit. On the other hand, the interpretation which Summit would have us give the instrument, as covering deficits and losses accruing during the period of two years after the date of the letter, would mean that the specific provisions of the letter limiting the credit to the deficit balance existing at the time of its issuance are meaningless.
The bank is liable, if at all, by reason of its contract to pay money on the terms set out on the letter of credit. It was not concerned with the contract between Summit and Shelter. Sisalcords Do Brazil, Ltd. v. Fiacao Brasileira De Sisal, S.A., 450 F.2d 419 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972).
The Parol Evidence Rule makes the written instrument the sole repository of the legal transaction, in the sense that the transaction must be derived from the written terms alone. The implementation of a written instrument requires interpretation. Where the meaning of the language of the contract is a contested question between the parties evidence may be induced to solve the issue.
The distinction between such interpretative evidence even where it consists of expressions of the parties to the instrument, and evidence of such expressions when offered to be used as a part of the contract, deed or other transaction, and hence prohibited by the Parol Evidence Rule, is clear. The one type of evidence concedes the supremacy of the writing and merely seeks to illuminate its meaning. The other seeks to displace, or annex itself to, the writing.
2 R. Ray., Texas Practice, Law of Evidence, § 1681, (3rd ed. 1980).
Evidence cannot be received which adds obligations not reasonably inferable from the language used in the contract. Where a written contract does not purport to deal with a particular subject, the failure of the contract to express the parties' intentions on that subject does not permit extrinsic proof of such intentions on the theory that the writing is ambiguous. The rule permitting oral testimony to explain an ambiguous writing has application only when the intention is expressed but is in uncertain language susceptible of more than one interpretation. Where the written contract is silent the question is not one of interpreting the language of the writing but of determining the legal effect of the writing. Don Drum Real Estate Co. v. Hudson, 465 S.W.2d 409 (Tex.Civ.App.  Dallas 1971, no writ).
The parties have not complained that any particular language contained in the letter of credit is ambiguous or unclear. In essence Summit's complaint is that the language used in the letter of credit does not express the intent of the parties as shown by the agency agreement. In effect, Summit would have us consider the letter of credit and the agency agreement as one contract between CNB, Summit and Shelter.
Letters of credit are governed by Article 5 of the Uniform Commercial Code. Tex.Bus. & Comm.Code Ann., § 5.102 (Vernon 1968). Section 5.114 of the Code emphasizes the established rule of law that the letter of credit is entirely independent of the underlying contract giving rise to the transaction. The two contracts cannot be construed together for the purpose of adding obligations in addition to those specifically set out in the letter of credit.
The allegations of fraud and estoppel asserted by Summit as affirmative defenses *227 are supported by affidavits of officers of the company establishing that Summit had the practice of requiring security funds to be posted by its agents either in cash or through irrevocable letters of credit. They state that Summit required and Shelter posted the letter of credit from CNB as collateral for funds due under the agency agreement and for protection for Summit for losses that might occur on bonds written by Shelter during the period of the agency agreement. This testimony merely relates to the type of letter of credit which Summit demanded and expected Shelter to post with them. There is no summary judgment evidence that CNB made any representations to Summit that were not included in the letter of credit. The summary judgment evidence fails to raise issues of fact on the necessary elements of fraud and estoppel.
Rule 166-A, the Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Town North National Bank v. Broaddus, 569 S.W.2d 489 (Tex.1978). The movant is not required to negate any affirmative defense plead. In order to avoid the summary judgment in favor of CNB, it was the burden of Summit to show the existence of an issue of fact with respect to their affirmative defense. Town North National Bank v. Broaddus, supra. Summit failed to carry this burden.
The judgment of the trial court is affirmed.