**MEDICAL TOWERS, Ltd., Appellant,**

v.

**ST. LUKE'S EPISCOPAL HOSPITAL, et al, Appellees.**

**No. B14–86–751–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 24, 1988.

Rehearing Denied May 5, 1988.

Will G. Dickey, William H. Scott, Jr., W. James Kronzer, Sidney N. Floyd, Houston, for appellant.

Jeffrey S. Wolff, Tom Alan Cunningham, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

## OPINION

MURPHY, Justice.

St. Luke's Episcopal Hospital and the Third National Bank as Trustee, Appellees, initiated this action for a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code to clarify the interpretation of a lease agreement. On April 3, 1954, the predecessor in interest of St. Luke's and the Bank, as lessor, negotiated a ninety-nine year lease for a tract of land located in the heart of the Texas Medical Center with the predecessor in interest of Medical Towers Ltd., as lessee. After the execution of the lease, the original lessee constructed an eighteen story medical office building, which is today known as the Medical Towers Building. Medical Towers, Ltd. which is a Texas limited partnership, purchased the Medical Towers building in 1983 and is the current lessee under the lease agreement. Rentals covering the term of the lease up to April 1, 1979, including periodic increases, were fixed by the lease agreement. After April 1, 1979, however, the calculated rental was to be "5% of the appraised value of the property," as adjusted at fifteen year intervals. At issue in this case is the proper appraisal method to be used in determining the appraised value of the property which will serve as a basis for calculation of the rental.

St. Luke's and the Bank (hereinafter St. Luke's) contended at trial that the unambiguous language of the lease agreement compels the use of an appraisal method "such as the comparable sales approach by which the value of the subject property reflects the market conditions in the area taking into consideration the use to which the subject property is dedicated." St. Luke's further plead, in the alternative, that if the lease agreement were construed to be ambiguous, the appraisal technique that best recognized the intent of the parties was the comparable sales approach. Expert testimony at trial established that the comparable sales approach takes sales of properties similar or comparable to the property in question and adjusts them for time, location, size and other factors such as dedicated land use to arrive at an estimate of value for the subject property.

In contrast, Medical Towers, Ltd. (hereinafter Medical Towers) insisted that the lease agreement unambiguously requires the use of the land residual technique of appraisal by which the value of the subject property is restricted by the dimensions,

income and expenses of the improvements on the property. The land residual technique is defined in the *Real Estate Appraisal Terminology*, First Printing, 1981, compiled and edited by Byrl N. Boyce, Ph. D. and sponsored jointly by the American Institute of Real Estate Appraisers and the Society of Real Estate Appraisers, as follows:

> A valuation technique which presumes that income can be split between land and improvements and that the residual to land can then be capitalized into value. Typically, the building is valued independently of the land, and the annual return on the building value (return on investment and provision for capital recapture) is deducted from the anticipated net operating income to the property (land and building). The residual amount is said to be attributable to the land and is capitalized at the appropriate risk (discount) rate to indicate the land value.

Under this method, no weight is given to the location of the subject property or to the value of other properties in the surrounding area.

Following six days of testimony, the trial court submitted the case to the jury, which unanimously found that the original parties to the lease agreement intended use of the comparable sales appraisal method urged by St. Luke's. Based upon evidence obtained and interpreted in accordance with this comparable sales approach, the jury further found the appraised value of the property to be $39.00 per square foot. After denying appellant's post-judgment motion for instructed verdict, motion to disregard the jury's answers to Special Issues No. 1 and No. 2, and Motion for Judgment Non–Obstante Veredicto, the trial court rendered judgment on the jury's verdict. We affirm the judgment of the trial court.

Appellant contends by four points of error that (1) the trial court erred in overruling appellant's post-verdict motions because the lease is unambiguous as a matter of law; (2) the lease unambiguously requires an appraised value which takes into account the fact that the land was restricted solely for use by the Medical Towers Building; that (3) Special Issue No. 1 erroneously submitted to the jury a question of law because (4) absent a judicial determination on the record that the lease was ambiguous, no material issue of fact was raised by the evidence thus rendering the jury's answers to Special Issues Nos. 1 and 2 immaterial and irrelevant. For convenience, we will first consider points one and two and the question of ambiguity in the contract.

Texas law has long accepted the rule that the question of whether a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex.1980). The law also provides extensive guidance to assist the court in making this determination. A contract is ambiguous when it is subject to more than one reasonable meaning, unresolvable by rules of interpretation. *Skelly Oil Company v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1962). On the other hand, the disagreement over the interpretation of an instrument does not automatically make it ambiguous. *Sun Oil Company (Delaware) v. Madeley,* 626 S.W.2d 726, 727 (Tex.1982); *Maxwell v. Lake,* 674 S.W.2d 795, 801 (Tex. App.—Dallas 1984, no writ). Nor does uncertainty or a lack of clarity in the language chosen by the parties suffice to render a contract ambiguous. *Universal C.I. T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *City of Houston v. Howe & Wise,* 323 S.W.2d 134, 141–142 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e. 373 S.W.2d 781). Ambiguity results when the intention of the parties is expressed in language susceptible of more than one meaning, but when a contract is silent, the question is not one of interpreting the language but rather one of determining its effect. *Maxwell v. Lake,* 674 S.W.2d at 802; *Summit Insurance Company of New York v. Central National Bank of Houston,* 624 S.W.2d 222, 226 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r. e.). On the contrary, when the contract is so worded that a court may properly give it a certain or definite legal meaning, it is not ambiguous. *R & P Enterprises,* 596 S.W. 2d at 519; *Alba Tool and Supply Compa-*

*ny, Inc. v. Industrial Contractors, Inc.,* 585 S.W.2d 662, 664 (Tex.1979). An unambiguous contract must be interpreted by the court as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

■ Evidence of circumstances surrounding its execution may be considered in the construction of an unambiguous contract, *Sun Oil Co.,* 626 S.W.2d at 731, even though oral statements of the parties' intent are inadmissible to vary or contradict the terms of the agreement. *Summit Insurance Company,* 624 S.W.2d at 226. Such circumstances help to illuminate the contractual language chosen by the parties and enable evaluation of "the objects and purposes intended to be accomplished by them in entering into the contract." *Garcia v. King,* 139 Tex. 578, 164 S.W.2d 509 (1942); *Skyland Developers, Inc. v. Sky Harbor Associates,* 586 S.W.2d 564, 570 (Tex.Civ.App.—Corpus Christi 1979, no writ). With the surrounding circumstances as a background, *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 519 (Tex.1968), the court is to examine the document in its entirety in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless. *Universal C.I.T.,* 243 S.W.2d at 158.

At the trial of the case before us, all parties agreed that the lease in question was unambiguous although they could not agree on the interpretation to be given paragraph II in particular. After establishing regularly escalating rentals for the first twenty-five years of the lease, paragraph II provides in pertinent part as follows:

Lessee, in consideration of the leasing of said premises as herein provided, covenants and agrees with lessor to pay lessor the following rents during the term of this lease ...

(d) For each of the next fifteen years of the lease, beginning April 1, 1979, and ending March 30, 1994, a sum equal to 5% of the appraised value of the property herein leased to lessee, which appraised value shall be determined at the beginning of such period in the manner herein provided ...

The appraised value of the property covered by the lease shall be determined, for the purpose of fixing rental hereunder during a portion of the term hereof as provided above, in the following manner: On or before six (6) months prior to the commencement of the twenty-sixth (26th) year of the term hereof, lessor and lessee each shall designate as its respective representative a party familiar with the value of real estate in the area in which the above described property is located. Notice of the designation of such representative shall be given in writing by each of the parties hereto to the other party. The two representatives thus chosen shall, as soon as practicable following their appointment, designate a third individual who is familiar with such real estate values, and the three individuals thus designated shall constitute a board of appraisers for the purpose of appraising the value of the property covered by this lease, such value to be determined within the six month's period immediately preceding the commencement of the twenty-sixth (26th) year of the term hereof. The action of a majority of such board of appraisers shall be binding upon the parties hereto and shall be the basis upon which the rental for the immediately succeeding period of this lease shall be determined in the manner provided above.

It is agreed that in valuing the property which is subject to this lease, the appraisers shall take into consideration the fact that an office building has been erected upon said property and that said property has been dedicated to use as a site for an office building. The value of the improvements, however, is not to be included in the appraisal value but such valuation shall be of the land only. All expenses incurred in connection with said appraisal shall be borne equally by lessor and lessee.

■ While this contractual provision is indefinite in that it fails to specify a partic-

ular method of appraisal to be employed in determining "the appraised value" of the property, this uncertainty is not sufficient to render the contract ambiguous. In fact, when subjected to accepted rules of construction applicable in this case, only one reasonable meaning of the provision emerges.

■ The lease provision in question twice mandates that the contemplated board of appraisers shall be composed of parties "familiar with the value of real estate in the area in which the above described property is located." Although no certain appraisal method is named in the lease, clearly the parties contemplated that the method used would take into consideration "the value of real estate in the area." Therefore, the location of the subject property was intended to be a factor in determining its value. At trial, it was established through expert testimony that the comparable sales approach proposed by appellee does take into account the location of the subject property and the value of surrounding real estate. On the other hand, appellant's expert admits that the residual value approach for which appellant contends makes no allowance for location as an element of value. In fact, an out-of-state appraiser with no knowledge of the location of the property or the value of real estate in the medical center area could conduct an appraisal of the property through the residual value approach. Therefore, to adopt the appraisal method proposed by appellant would require this court to render meaningless the clear requirement of the lease that the appraisers shall be "familiar with the value of real estate in the area."

■ As further support for its position, appellant insists that the lease unambiguously requires an appraised value that takes into account the fact that the land is restricted solely for use by the Medical Towers Building. Appellant's reasoning on this point is not persuasive. The lease does require that the appraisers "shall take into consideration the fact that *an* office building has been erected upon said property and that said property has been dedicated

to use as a site for *an* office building." However, at the time of the execution of the lease, the Medical Towers Building was not yet built on the site nor was that one particular building contemplated to be built. Paragraph V of the lease specifies as follows:

> As additional consideration for the execution and delivery of this lease to lessee, lessee agrees and firmly binds itself to construct, erect and complete upon such premises, at lessee's sole cost, risk and expense, a multi-storied office building containing not less than approximately 100,000 sq. ft of floor area (excluding garage area).... The architectural design and appearance of said building shall be subject to lessor's approval.

This language taken with that set out in Paragraph 2 and elsewhere in the lease establishes that the Medical Towers Building was not specifically within the contemplation of the parties at the time of the execution of the lease. The only limitations on the proposed building established by the lease were as to the *minimum* size of the structure. Lessee was otherwise free to construct whatever building it wished, subject only to aesthetic review. Furthermore, in paragraph X the lease provides that improvements, alterations, and additions may be made by lessee to whatever building was ultimately constructed upon the site, again with only the limitations of review by lessor regarding structural integrity and aesthetics. Only a strained construction of the document could support Medical Towers' contention that the property is restricted solely for use by the Medical Towers Building erected thereon in 1954.

For the reasons set out above, we hold that the lease agreement in question unambiguously requires the use of an appraisal method such as the comparable sales approach contended for by St. Luke's. It is sufficient that the comparable sales relied upon to establish the appraised value of the property were appropriately adjusted to allow for dedication of the property as *an*

office building site. Appellant's points of error 1 and 2 are overruled.

▮ Having held the lease to be unambiguous in its terms, we now consider appellant's third and fourth points of error. In point of error three, Medical Towers states that the trial court erred in submitting special issue number one to the jury because the issue presented a question of law. Point four complains that the court erred in overruling appellant's post judgment motions because, absent a judicial determination that the lease was ambiguous, no material issue of fact was raised by the evidence and the jury's answers to special issues one and two are immaterial and irrelevant. Appellant correctly states that interpretation of an unambiguous document is a question of law for the trial court only. *City of Pinehurst,* 432 S.W.2d at 518. *Wynnewood State Bank v. Embrey,* 451 S.W.2d 930, 932 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). Was it then error to ask the jury to determine which appraisal method was to be used in arriving at the value of the subject property?

Special issues one and two, with the jury's answers indicated, inquired as follows:

### SPECIAL ISSUE NO. 1

Find from a preponderance of the evidence the method the parties to the lease agreement intended to be used in arriving at the appraised value of the subject property. Answer by placing a check mark next to the method intended:

X a. a method such as the comparable sales approach by which the value of the subject property reflects the market conditions in the area taking into consideration the use to which the subject property is dedicated.

__ b. a method such as the land residual technique by which the value of the subject property is restricted by the dimensions, income and expenses of the improvement on the property.

### SPECIAL ISSUE NO. 2

Using the method you have found the parties intended to be used in appraising the subject property, find from a preponderance of the evidence the value of the property as of April 1, 1979.

Answer in dollars per square foot, without including the improvements.

ANSWER: $39.00 answer in dollars and cents.

### OR

Answer in the total value of the property, without including the improvements.

ANSWER: $____ answer in dollars and cents.

While special issue No. 1 seems to present a question of law or a mixed question of law and fact, the jury was not asked to interpret the language of the lease itself but only to determine which of the two appraisal methods asserted was intended to be used. In other words, the jury was asked to resolve an uncertainty in an unambiguous contract.

Appellant insists, however, that an affirmative ruling of ambiguity by the trial court was *required* prior to submission of Special Issue No. 1 and that the refusal of the court to so rule constitutes reversible error. While the better practice would be for the court to clearly characterize a contract as ambiguous or unambiguous and affirmatively rule on that issue one way or the other, in some cases such a distinction is most difficult to draw. The trial court, sensing perhaps the distinction between an ambiguous contract and a contract which is merely uncertain rather than inconsistent in its terms, resisted Appellant's demands for a ruling of ambiguity but nevertheless sought the jury's advice on clarifying an indefinite contract provision. The jury, in turn, unanimously reached the same result as we do, specifically that the lease requires the use of an appraisal method such as the comparable sales approach.

▮ Under the circumstances, we cannot hold that the trial court's refusal to affirmatively rule on the issue of ambiguity warrants reversal of its judgment. Even if special issue number one had pre-

sented a question of law, in this case its submission would be considered harmless. Submission of a question of law to a jury is harmless unless there is a showing of extraneous prejudice. *Lede v. Aycock,* 630 S.W.2d 669, 674 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Absent some showing of extraneous prejudice, the submission of a question of law is harmless: if it is answered as the court should have decided, it can hardly damage; if it is answered to the contrary, the finding would be immaterial and hence should be ignored. 3 R. McDonald, *Texas Civil Practice,* 12.37.2.

Appellant's third and fourth points of error are overruled. The judgment of the trial court is affirmed.