Affirmed in part, Reversed and Remanded in part and Opinion filed August
3, 2004









Affirmed in part, Reversed and Remanded in part and
Opinion filed August 3, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01206-CV

____________

 

HEWLETT-PACKARD
COMPANY,
Appellant

 

V.

 

BENCHMARK
ELECTRONICS, INC., Appellee

 



 

On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 02-39791A

 



 

O P I N I O N

Appellant, Hewlett-Packard Company,
appeals from a final judgment based on two summary judgments granted in favor
of appellee Benchmark Electronics, Inc. 
Concluding the summary judgment proof does not conclusively establish
limitations bars Hewlett-Packard=s  breach of contract claim, but does
conclusively establish limitations bars Hewlett Packard=s claim for money
had and received, we reverse and remand in part and affirm in part.








FACTUAL AND PROCEDURAL BACKGROUND

In May 1995, Hewlett Packard=s predecessor,
Compaq Computer Corporation, as Buyer, entered into a Purchase Agreement with
Avex Electronics, Inc., Benchmark=s predecessor, as
Seller.[1]  Under the Agreement, Benchmark was to
assemble computer components, primarily motherboards, and sell them to
Hewlett-Packard.  The Agreement did not
require Hewlett-Packard to purchase any minimum quantity of computer
components, but Aonly establishe[d] the terms and
conditions for such purchases if and when they occurr[ed].@  The Agreement specifically stated the parties
intended to enter into a Along term relationship.@

To assemble the motherboards, Benchmark
was to incorporate chipsets, which Hewlett-Packard obtained from Intel and had
shipped directly to Benchmark.  Under the
Agreement:








Buyer shall issue a debit memo with respect to the
purchase price of Buyer Furnished Material sold by Buyer to Seller, and Buyer
immediately may apply such debit memo against any amounts then owing or that
may become owing by Buyer to Seller.  In
the event any amount reflected in a debit memo has not been satisfied in full
by means of applying the Seller=s invoices against the amount owed by Buyer to Seller
within 45 calendar days following the debit memo date, Seller shall pay Buyer
in US dollars (or such other currency as Buyer and Seller may agree upon) the
remaining balance of such debit memo.  To
secure Seller=s payment obligations hereunder, Seller hereby grants
to Buyer a security interest and purchase money security interest in all Buyer
Furnished Material and all accounts receivable and other proceeds thereof.  Buyer may take any action (without notice,
presently [sic], demand, protest, notice of protest or dishonor, notice of
acceleration or notice of intent to accelerate, all of which Seller hereby
waives) afforded a secured party under the Uniform Commercial Code upon the
occurrence of a default by Seller, and upon such occurrence, all payment
obligations of Seller to Buyer shall, upon notice by Buyer, become immediately
due and payable; provided, if the Default giving rise to the foregoing remedies
is attributable the Seller=s insolvency or any bankruptcy related proceeding
affecting Seller, all obligations of Seller to Buyer shall automatically become
due and payable.  Any Buyer furnished
material sold by Buyer to Seller shall be sold only in amounts consistent with
firm schedule requirements.

 

Initially, the Agreement provided, ATerms of payment
shall be net 45 from the date of Seller=s invoice provided
that Product has been received by Buyer.@  The parties subsequently amended this
provision: ABuyer shall make payment in full for the
purchase price of all Product purchased hereunder . . . and received by Buyer
on or before the 30th day after the date of Seller=s invoice. . .
.  Any payment not received by day 45 is
considered late.@

The parties also agreed to a two-year
limitations period for claims arising from the Agreement:  ANo action . . .
regardless of form, arising out of this Agreement may be brought by either
party more than two (2) years after the cause of action has arisen; or, in the
case of non-payment, more than two (2) years from the date the payment was due.@  The parties never amended or revoked this
provision.

In August 1999, Benchmark acquired
Avex.  Shortly thereafter,
Hewlett-Packard=s demand for the completed motherboards
decreased dramatically, and the parties began to wind down their relationship
under the Agreement.  According to
Benchmark=s summary judgment proof, Hewlett-Packard
last supplied chipsets to Benchmark in October 1999, Benchmark delivered the
last shipment of motherboards to Hewlett-Packard in January 2000, and
Hewlett-Packard made its last payment to Benchmark in February 2000.  Hewlett-Packard issued its last debit memo
August 10, 2000.

For approximately two and one-half years,
until at least May 2002, the parties attempted to reconcile their accounts,
with each party claiming it was owed money under the Agreement.  The parties apparently were not able to
resolve their claims, and on August 7, 2002, Hewlett-Packard sued Benchmark for
breach of the Agreement.








Four days after filing its answer,
Benchmark moved for summary judgment on the ground of limitations.  Benchmark relied on the two-year contractual
limitations provision and argued it was undisputed Hewlett-Packard Abrought its claim
more than two (2) years after the claimed payments were allegedly due under the
Purchase Agreement.@  As
support, Benchmark pointed to (1) the undisputed evidence Benchmark acquired
Avex in August 1999 and Hewlett-Packard=s assertion it had
an open claim dating back to Benchmark=s acquisition of
Avex; and (2) Benchmark=s last delivery of motherboards to
Hewlett-Packard in January, 2000, which necessarily would have occurred after Benchmark=s last purchase of
chipsets.

Hewlett-Packard responded, arguing that,
although the Agreement provided 
Benchmark owed a cash payment if Hewlett-Packard had not applied the
debit memo against amounts owing within 45 days, the Agreement did not contain
a due date for the cash payment. 
Hewlett-Packard also argued its claim accrued when the parties ceased
doing business.  Hewlett-Packard
contended this date was no earlier than August 10, 2000, when Benchmark
admitted a transaction (issuance of the debit memo) occurred under the
Agreement.

Benchmark replied, contending for the
first time, AThere is no dispute that according to the
express terms of the [Agreement], Benchmark=s payment of each
of [Hewlett-Packard=s] debit memos was due 45 days from the
date of each debit memo.@ 
Benchmark argued Hewlett-Packard had the right to sue forty-five days
after the date of each debit memo. 
Benchmark subsequently argued Hewlett-Packard=s Acauses@ of action accrued
on the forty-sixth day after the date on each of Hewlett-Packard=s debit memos and
conceded limitations might not preclude a claim stemming from the August 10,
2000 debit memo.

On December 9, 2002, seven days before the
hearing on the motion for summary judgment, Hewlett-Packard filed an amended
petition.  In addition to its original
breach of contract claim, Hewlett-Packard asserted claims for common law fraud
and fraudulent promise, breach of contract for failure to reconcile accounts,
and, in the alternative, for money had and received.








On December 16, 2002, the trial court
granted Benchmark=s motion for summary judgment in
part.  The trial court ordered that, with
the exception of Hewlett-Packard=s claim under the
August 10, 2000 debit memo, Hewlett-Packard=s breach of
contract claim was barred and dismissed with prejudice.

Benchmark then filed a motion for summary
judgment on the additional claims asserted in the amended petition.  The trial court granted the motion on all
claims.  Finally, the trial court severed
the breach of contract claim based on the August 10, 2000 debit memo from the
remaining claims, making the summary judgments final.[2]  On appeal, Hewlett-Packard challenges only
the summary judgments on its breach of contract claim for non-payment of the
debit memos and its claim for money had and received.

DISCUSSION

Issue and Standard of Review

In a single issue, Hewlett-Packard
contends the trial court erred in granting summary judgment in favor of
Benchmark.  The movant for summary
judgment has the burden of showing there is no genuine issue of material fact
and he is entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985).  When
deciding whether there is a disputed material fact issue precluding summary
judgment, the appellate court must take as true all evidence favorable to the
non‑movant.  Id. at 548B49.   The reviewing court must indulge every
reasonable inference in favor of the non‑movant and resolve any doubts in
her favor.  Id. at 549.








We are limited to those grounds expressly
set forth in the motion to determine whether the summary judgment was properly
granted.  McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993). When the trial court=s summary judgment
order does not specify the grounds for its summary judgment, this court must
affirm the judgment if any of the theories presented to the trial court and
preserved for appellate review are meritorious. 
Provident Life & Accident Ins. Co v. Knott, 128 S.W.3d 211,
216 (Tex. 2003).  Our review of a summary
judgment is de novo.  Id.
at 215.

When a movant seeks summary judgment
because limitations expired, it is the movant=s burden to
conclusively establish the bar of limitations, including when the cause of
action accrued.  See KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); Brown
v. Shores, 77 S.W.3d 884, 887 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  If the movant
establishes the statute of limitations bars the action, the non‑movant
must then adduce summary judgment proof raising a fact issue in avoidance of
the statute of limitations.  KPMG Peat
Marwick, 988 S.W.2d  at 748.

Breach of Contract

Grounds Raised and
When Raised








Benchmark based
its summary judgment motion on the breach of contract claim solely on the
limitations paragraph in the Agreement, which provided, Ain the case of
non-payment,@ no action could be brought by either
party Amore than two (2)
years from the date the payment was due.@  In its motion for summary judgment, Benchmark
relied on (a) Hewlett-Packard=s assertion in an
e-mail that it had an open claim dating back to Benchmark=s acquisition of
Avex, which had occurred in 1999, and on (b) Benchmark=s last shipment of
motherboards in January 2000.  Benchmark
argued Anon-payment@ of the debit
memos had occurred as of one of those dates. 
In its reply to Hewlett-Packard=s response,
Benchmark presented a third argument: 
payment on each of the debit memos was due 45 days from the date of each
debit memo.  In yet another reply,
Benchmark expanded on this third argument, contending Hewlett-Packard=s causes of action
accrued on the forty-sixth day after the date on each of the debit memos.[3]

Hewlett-Packard
contends none of Benchmark=s three arguments
address or prove when payment was due on the debit memos.  Hewlett-Packard additionally argues summary
judgment may not be affirmed based on the third argument because Benchmark
first raised it in its reply to Hewlett-Packard=s response to the
summary judgment motion.

On appeal,
Benchmark contends their third argument was not an additional Aground,@ for summary
judgment, but only a rebuttal to Hewlett-Packard=s response or
additional reasoning in support of its sole ground of limitations.  Benchmark further contends, because
Hewlett-Packard addressed the argument in its amended response to the motion
for summary judgment, the trial court could properly consider it.

Consistent with
Texas Rule of Civil Procedure 166a(c), a summary judgment motion must stand or
fall on the grounds expressly presented in the motion.  See McConnell, 858 S.W.2d at 342; see
also Tex. R. Civ. P. 166a(c).  An appellate court cannot affirm a summary
judgment on grounds not expressly set out in the motion or response.  Stiles v. Resolution Trust Corp., 867
S.W.2d 24, 26 (Tex. 1993).  Nevertheless,
we need not decide whether Benchmark=s third theory was
sufficiently raised by the motion for summary judgment because, as discussed
below, neither that theory, nor the two theories specifically raised in the
motion support summary judgment on the basis of limitations.

The Contractual
Provisions on which Benchmark Based its Limitations Defense








Benchmark based
its limitations defense solely on the contractual provision that, Ain the case of
non-payment,@ no action Amay be brought by
either party . . . more than two (2) years from the date the payment was due.@  The parties agree this two-year contractual
limitations period is enforceable.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 16.070(a) (Vernon
1997).

Because the contract
set the payment due date as the date on which the limitations period commenced,
Benchmark was required to prove conclusively when payment was due for the
chipsets Hewlett-Packard furnished.  See
Seibert v. General Motors Corp., 853 S.W.2d 773, 775 (Tex. App.CHouston [14th
Dist.] 1993, no writ) (stating, in part, defendant seeking summary judgment
based on limitations must prove when the cause of action accrued, and unless
movant conclusively establishes each element of the affirmative defense, non‑movant
plaintiff has no burden in response to defendant=s motion).  As discussed below, none of Benchmark=s summary judgment
theories and associated summary judgment proof establish when payment was due.

We begin with the
Agreement.  The primary concern of a
court in construing a written contract is to ascertain the true intent of the
parties as expressed in the instrument.  Lenape
Res.  Corp. v. Tenn. Gas Pipeline Co.,
925 S.W.2d 565, 574 (Tex. 1996); Clear Lake City Water Auth. v. Kirby Lake
Dev., Ltd., 123 S.W.3d 735, 743 (Tex. App.CHouston [14th
Dist.] 2003, pet. filed).   To achieve
this objective, we examine and consider the entire writing in an effort to
harmonize and give effect to all the provisions of the contract so that none
will be rendered meaningless.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Clear Lake City Water Auth.,
123 S.W.3d at 743.  We construe a
contract from a utilitarian standpoint, bearing in mind the particular business
activity sought to be served.  Lenape
Res. Corp., 925 S.W.2d at 574; Clear Lake City Water Auth. , 123
S.W.3d at 743.

The mere fact the
parties disagree about a contract=s meaning does not
make a contract ambiguous.  Appleton
v. Appleton, 76 S.W.3d 78, 84 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  Neither does an
ambiguity arise solely because the parties= respective
interpretations of the contract are sharply conflicting.  Moncrief v. ANR Pipeline, Co., 95
S.W.3d 544, 547 (Tex. App.CHouston [1st
Dist.] 2002, pet. denied) (citing Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996)).








If, however, a
contract is subject to more than one reasonable interpretation,
it can be ambiguous.  Nat=l Union Fire Ins.
Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995); Clear Lake City
Water Auth. , 123 S.W.3d at 743. 
Moreover, this court may conclude a contract is ambiguous even if the
parties do not contend it is.  See
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 231 (Tex. 2003).  When a contract contains an ambiguity, granting a motion for
summary judgment is improper because interpretation of the instrument becomes a
fact issue.  Coker, 650 S.W.2d at
394; Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1979).

The ramifications
of silence in a contract, however, are different.  When a contract is silent, the question is
not one of interpreting the language but rather one of determining its effect.  Lidawi v. Progressive County Mut. Ins. Co.,
112 S.W.3d 725, 731 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  A jury may not be
called upon to construe the legal effect of an agreement or to supply an
essential term upon which the parties did not mutually agree.  Thompson v. CPN Partners, L.P., 23
S.W.3d 64, 71 (Tex. App.CAustin 2000, no pet.).  Nonetheless, silence may create a latent
ambiguity.  See Donahue v. Bowles,
Troy, Donahue, Johnson, Inc., 949 S.W.2d 746, 753 (Tex. App.CDallas 1997, writ
denied)  (holding buy-and-sell agreement,
which did not provide any time frame within which appraisal had to be
completed, contained latent ambiguity regarding which of two appraisals should
be used to determine the value of shares). 
In such a case, the latent ambiguity must be determined by the trier of
fact and summary judgment is inappropriate. 
See id.

The Agreement
provides for immediate application of a debit memo against amounts then owing
or to be owed by Benchmark:  ABuyer shall issue
a debit memo with respect to the purchase price of Buyer Furnished Material
sold by Buyer to Seller, and Buyer immediately may apply such debit memo
against any amounts then owing or that may become owing by Buyer to Seller.@  The Agreement also appears to mandate a cash
payment from Benchmark if Hewlett-Packard has not applied the debit within 45
days after the date of the debit memo:








In the event any amount reflected
in a debit memo has not been satisfied in full by means of applying the Seller=s invoices against the amount owed
by Buyer to Seller within 45 calendar days following the debit memo date,
Seller shall pay Buyer in US dollars . . . the remaining balance of such debit
memo.

 

There is nothing in either
sentence, however, stating when Hewlett-Packard is to issue a
debit memo or when Benchmark must make the cash payment, i.e.,
when the payment on a debit memo is Adue.@

In contrast, the
Agreement specifically sets due dates for other events and payments.  The Agreement provides, in the case of  Benchmark=s default, and on
Hewlett-Packard=s demand, all Benchmark=s obligations are Aimmediately due
and payable.@ 
And, if the default is attributable to insolvency or bankruptcy
proceedings, Aall obligations of Seller to Buyer shall
automatically become due and payable.@  Finally, the original agreement provided, ATerms of payment
shall be net 45 from the date of Seller=s invoice provided
the Product has been received by Buyer.@  That provision was subsequently amended to
read:

Buyer shall make payment in full
for the purchase price of all Product purchased hereunder . . . and received by
Buyer on or before the 30th day after the date of Seller=s invoice; provided, Seller=s invoice shall not be dated
earlier than the pull date of Product covered thereby. . . .  Any payment not received by day 45 is
considered late.

 

In short, when the
parties desired a specific due date, they provided for it in the
Agreement.  See Cook Composites, Inc.
v. Westlake Styrene Corp., 15 S.W.3d 124, 132 (Tex. App.CHouston [14th
Dist.] 2000, pet. dism=d) (looking at comparable language in
related clause to help define the meaning of language at issue); cf. Fireman=s Fund County Mut.
Ins. Co. v. Hidi, 13 S.W.3d 767, 769 (Tex. 2000) (stating, when Legislature
employs term in one part of statute and excludes it in another, court presumes
Legislature had a reason for doing so). 
They did not do so for payment on the debit-memos.  We conclude the Agreement is silent regarding
when payment on these memos is due.








Benchmark=s Summary Judgment
Arguments

The forty-sixth day theory. 
Benchmark nevertheless reads the 45-day provision for debit memos as
setting a payment due date: the forty-sixth day after the debit memo was
issued.  Benchmark contends this interpretation
is consistent with other provisions in the Agreement and with debit memos
stating, APayment Terms: BT 45.@  As discussed above, however, the fact the
Agreement sets a specific due and late date for the Buyer=s payments argues
against reading the Agreement to provide a due date for the Seller on the debit
memos when similar language is lacking in the debit-memo provision.

Neither does the
notation regarding payment terms assist Benchmark in conclusively proving its
limitation defense.  First, there is
nothing in the summary judgment proof to suggest what ABT45@ means.  Second, resorting to evidence outside the
Agreement is appropriate only if the Agreement is ambiguous.[4]  See
Sun Oil Co.  (Delaware) v. Madeley,
626 S.W.2d 726, 732 (Tex. 1982).  And, if the Agreement is ambiguous, summary
judgment is not appropriate.  Coker,
650 S.W.2d at 394; Harris, 593 S.W.2d at 306.








Benchmark also
argues lack of a payment due date for the debit memos could mean payment might
never be due.  It reasons such an
interpretation runs counter to the parties= intent to limit
liability for non-payment to two years and would render the two-year
limitations provision meaningless. 
Nevertheless, when a contract is silent regarding the date for an action
to be taken, the courts will construe the contract as requiring such action be
taken within a reasonable time.  See
Price v. Horace Mann Life Ins. Co., 590 S.W.2d 644, 646 (Tex. Civ. App.CAmarillo 1979, no
writ) (concluding contract silent regarding time within which insurer might
require application for reinstatement and inferring parties intended a
reasonable time); see also Maxwell v. Lake, 674 S.W.2d 795, 802B03 (Tex. App.CDallas 1984, no
writ) (concluding contract silent on method of exercising option and therefore
inferring option could be exercised by giving notice within option period and
tendering performance within a reasonable time thereafter).  The question of reasonableness is usually one
for the trier of fact, and Benchmark did not conclusively establish a
reasonable time for the payment to be due fell outside two years of when
Hewlett-Packard filed suit.  Cf. HECI
Exploration Co. v. Clajon Gas Co., 843 S.W.2d 622, 634 (Tex. App.CAustin 1992, writ
denied) (stating question of how long after end of accounting period seller
could wait before presenting the invoices is for trier of fact).

Benchmark has not
conclusively proved payment was due on the 46th day after the debit memo
issued.  Accordingly, it has not
conclusively established its limitation defense based on that theory.

Hewlett-Packard=s reference to Aan open claim@ dating back to 1999. 
Benchmark argues the following Aadmission@ in a May 3, 2002
e-mail establishes its limitations defense: 
ACompaq Computer
Corporation has an open claim for $12.1M due from Benchmark dating back to the
acquisition of Avex.@[5]  Because it is undisputed Benchmark acquired
Avex in 1999, Benchmark concludes Hewlett-Packard=s lawsuit,
filed  in August 2002, is barred by the
two-year contractual limitations period.








An e-mail,
although it may constitute summary judgment proof, does not rise to the level
of a judicial admission, such as would conclusively establish Benchmark=s limitations
defense.  See Seminole Pipeline Co. v.
Broad Leaf Partners, Inc., 979 S.W.2d 730, 740 (Tex. App.CHouston [14th
Dist.] 1998, no pet.) (stating judicial admission must be (1) made in course of
judicial proceeding; (2) contrary to an essential fact for party=s recovery or defense;
(3) deliberate, clear and unequivocal; (4) related to fact on which judgment
for opposing party could be based; and (5) enforcing admission would be
consistent with public policy; also holding statements by counsel about
represented companies= responsibility for overfilling of
reservoir did not rise to the level of judicial admissions).  Moreover, that a claim may Adate back to@ 1999 does not
conclusively establish when payment was due on the debit memos giving rise to
the claim and thus does not establish when the limitations period
commenced.  The e-mail does not
conclusively establish Benchmark=s limitations
defense.

The date of Benchmark=s last shipment to Hewlett-Packard.  In its summary judgment motion, Benchmark
also argued Hewlett-Packard could not Apush the accrual
of its claim past January of 2000, because that is when the parties ceased
doing business.@ 
The termination of business, however, does not conclusively establish
when payment was due on a debit memo under the Agreement.  In fact, at least one debit memo was issued
on August 10, 2000, well after the alleged business termination date.  Benchmark has conceded Hewlett-Packard=s claim for the
amount due on this memo might not be barred by limitations, thereby
undercutting its argument Hewlett-Packard=s claim accrued by
January 2000.  The last shipment in
January 2000 does not conclusively establish Benchmark=s limitations
defense.

None of Benchmark=s three theories,
together with the summary judgment proof in support, establishes Benchmark=s limitations
defense as a matter of law in relation to Hewlett-Packard=s breach of
contract claim.  Accordingly, we sustain
Hewlett-Packard=s issue to the extent it concerns summary
judgment on Hewlett-Packard=s claim for breach
of the Agreement.

Money Had and
Received








Hewlett-Packard
also challenges the trial court=s summary judgment
in favor of Benchmark on Hewlett-Packard=s claim for money
had and received.  In its motion for
summary judgment on that claim, Benchmark asserted the claim (1) was barred by
a two-year limitations period and (2) failed on the merits because the undisputed
facts showed Hewlett-Packard had not Aoverpaid@ Benchmark, but
had paid only what it owed on Benchmark=s invoices under
the Agreement and Hewlett-Packard was therefore seeking to recover Aunpaid debits.@  Hewlett-Packard argued (1) the four-year
statute of limitations applied and (2) Benchmark could not defeat the claim on
the merits by quibbling about terminology because its equitable claim of money
had and received was independent of the Agreement.

The Agreement
contained its own limitations provision: 
ANo action . . .
regardless of form, arising out of this Agreement may be brought by either
party more than two (2) years after the cause of action has arisen. . . .@  As discussed above, this two-year provision
is enforceable.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.070(a) (Vernon
1997).

Hewlett-Packard,
however, contends Benchmark, in its summary judgment motion, did not raise an
argument based on this provision.  We
disagree.  Benchmark, albeit in a
footnote, argued:  AMoreover, section
27(C) of the Purchase Agreement imposes a two year limitations period for any
actions arising out of the Purchase Agreement.@  Benchmark then directed the trial court to
the specific place in the summary judgment proof where the provision could be
found.








Hewlett-Packard
also contends the contractual limitations period does not apply because its
action for money had and received is an equitable claim, which is separate
from, and does not arise out of, the Agreement. 
We acknowledge the right to recovery under a count of money had and
received exists independent of the parties= agreement.  See City of Harker Heights, Tex. v. Sun
Meadows Land, Ltd., 830 S.W.2d 313, 317 (Tex. App.CAustin 1992, no
writ).  Nevertheless, the action for
money had and received may arise out ofCor be founded onCthe
agreement.  See id.  (stating, although not dependent on either,
an action for money had and received may be founded on an express agreement or
one implied in fact).  Such is the
situation in the present case when, but for the Agreement, Hewlett-Packard
would have had no claim against Benchmark.[6]

Hewlett-Packard=s claim for money
had and received, filed more than two years after its last payment to
Checkpoint, was barred by the contractual limitations period.  The trial court correctly granted summary
judgment on that claim.

Accordingly, we
overrule Hewlett-Packard=s issue to the extent it concerns summary
judgment on Hewlett-Packard=s claim for money
had and received.

CONCLUSION

We affirm the
trial court=s judgment dismissing with prejudice
Hewlett-Packard=s claim for money had and received.  We reverse the trial court=s judgment
dismissing with prejudice Hewlett-Packard=s breach of
contract claim for non-payment, and remand this cause for further proceedings
consistent with this opinion.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed August 3, 2004.

Panel consists of Justices Yates, Anderson, and Hudson.

 











[1]  Unless
necessary to distinguish between predecessor and successor companies, we refer
to Compaq and Hewlett-Packard as AHewlett-Packard@ and Avex and Benchmark as ABenchmark.@





[2]  In the course
of the proceedings, Benchmark asserted a counterclaim for breach of contract
based on non-payment.  That counter claim
remains in the original cause, along with Hewlett-Packard=s breach of contract claim based on the August 10,
2000 debit memo.





[3]  Benchmark made
this expanded argument in its reply to Hewlett-Packard=s amended response to the summary judgment
motion.  This reply was filed three days
before the trial court heard the summary judgment motion.





[4]  In support of
its contention the notation is Arelevant in determining the proper construction of the
Purchase Agreement,@ Benchmark cites Cook Composites, Inc. v. Westlake
Styrene Corp., 15 S.W.3d 124, 132 (Tex. App.CHouston
[14th Dist.] 2000, pet. dism=d).  The cases
cited by the Cook court, however, refer to evidence of the circumstances
surrounding execution of the contract, not to evidence of post-contract
conduct.  See Sun Oil Co.  (Delaware) v. Madeley, 626 S.W.2d 726,
731 (Tex. 1982); Medical Towers, Ltd. v. St. Luke=s Episcopal Hosp., 750 S.W.2d 820, 823 (Tex. 
App.CHouston [14th Dist.] 1988, writ denied).





[5]  Although it
did not do so in its summary judgment motion, Benchmark now refers to a May
2002 letter in which Joseph Simon of Benchmark stated he had worked with a
number of Compaq personnel Aover the past 2 2 years
to obtain supporting documentation from Compaq and to provide to Compaq
necessary documentation to resolve all claims between our two companies.@  In addition to
not establishing when payment was due on the debit memos, this letter does not
meet the standards for summary judgment proof. 
See Schultz v. Rural/Metro Corp., 956 S.W.2d 757, 761 (Tex. App.CHouston [14th Dist.] 1997, no writ)  (stating self‑serving statements by
interested witnesses regarding what they knew or intended are not easily
controverted and will not support a summary judgment motion).





[6]  We note at
least one court has stated Aan agreement is essential to a cause of action for
debt.@  Dallas
County Cmty. College Dist. v. Bolton, 89 S.W.3d 707, 722 (Tex. App.CDallas 2002, pet. granted).  Hewlett-Packard characterizes its claim for
money had and received as an action for debt to bring it under the four year
statute of limitation in Texas Civil Practice and Remedies Code section
16.004(a)(3) (Vernon  2002).  Hewlett-Packard=s
position in this regard reinforces the conclusion its action for money had and
received is an Aaction . . . arising out of [the] Agreement.@